JOHN E. CHAMBERLAIN v. HENRY GODFREY, B. F. THURBER, J. L. BOWLES AND ORIN BUTLER.

*Sheriffs. Surety. Privity. Judgment.*

The defendants were jointly and severally bound in a penal bond, conditioned to indemnify and save harmless the plaintiff, as sheriff of the County of Orange, from all actions, suits, troubles, costs, charges, damages and expenses, on account of any malfeasance, misfeasance or nonfeasance of the defendant Godfrey, as deputy sheriff. Judgment was recovered in a suit against the sheriff for the neglect of his deputy in not paying over moneys collected on an execution. *Held*, that this judgment was conclusive as to the fact of the deputy's neglect, not only against the deputy, who defended the suit, but also against the sureties, who had no notice.

Where the sureties, by the express terms of their agreement, or by reasonable implication from the very nature and intent of their obligation, have stipulated to pay the damages and costs which may be recovered against their principal, or otherwise to abide the decree or judgment of a court against the principal, then they are bound by the judgment, though they have no notice of the suit.

DEBT on a bond held by a sheriff from his deputy. Plea, *non est factum* and two pleas of performance. The plaintiff joined issue on the first plea, and assigned two several breaches of the bond in suit. To the first assignment of breach the defendants Thurber, Bowles and Butler, who were the sureties, rejoined specially,—to which rejoinder the plaintiff demurred. The plaintiff withdrew the second assignment.

The condition of the bond is given in the opinion of the court. The plaintiff, who was sheriff of Orange County, was sued on account of the default of the defendant, Godfrey, who was his deputy, in neglecting to pay over to the creditor the monies collected by him upon a certain execution. Judgment was rendered against the plaintiff for the amount of the execution collected. Godfrey had notice of the suit against the plaintiff, and appeared and took upon himself the defence of the action. The other defendants, who were the sureties on the bond, had no notice of the suit.

The Court, at the June Term, 1862, Orange County Court, PECK, J., presiding, rendered judgment, *pro forma*, that the defendant's rejoinder was insufficient, and also rendered judgment for the plaintiff, on the issue made by the plea of *non est factum*,

to recover the amount of the execution against him in the former suit. To which judgment the defendants excepted.

*Peck & Colby*, for the defendants.

The sureties were not parties to the suit against the sheriff, and had no notice of it, and are not bound by the judgment. *Jackson* v. *Griswold*, 4 Hill 522.

Even a recovery on the bond in question against Godfrey would not bind the sureties. *Parkhurst* v. *Sumner*, 23 Vt. 538; *Fletcher et al.* v. *Jackson et al., ib.* 581; *Morris* v. *Lucas*, 8 Blackf. 9; *Douglas* v. *Howland*, 24 Wend. 35; *King* v. *Norman*, 4 C. B, 883; *Conevack* v. *State*, 5 Binn. 184; *Beal* v. *Buck*, 3 Har. & McH. 242; *Munford* v. *Ov. of Poor*, 2 Rand. 313; *Moss* v. *McCulloch*, 5 Hill. 131; *Malin* v. *Buel*, 13 Searg. & R. 441, 443; *Kip* v. *Brigham et al.*, 6 Johns. 158; 7 *ib.* 168; *Pritchard* v. *Hitchcock*, 46 Com. L. R. 151; *Bond* v. *Ward*, 1 Nott & McCord 201; 1 Stark, Ev. 256, 7th Am. Ed.; 1 Greenl. Ev. 713 §539.

In Massachusetts and Maine a judgment in such case is held to be *prima facie* evidence only. *City of Lowell* v. *Parker*, 10 Met. 313.

*C. B. Leslie* and *C. W. Clark*, for the plaintiffs.

The judgment as to Godfrey is conclusive upon all matters involved in it. 2 Smith's Lead. Ca. 577; *Kip* v. *Brigham*, 6 John. 158; 4 Indiana 409; *Littleton* v. *Richardson*, 34 N. H. 179. The judgment is as conclusive upon the sureties as upon Godfrey. 2 Smith's Lead. Ca. 578, 4 Ed.; *Duffield v. Scott*, 3 T. R. 374 (208); *Robbins* v. *Bacon*, 1 Root 348; *Lowell* v. *Parker*, 10 Met. 309; *Sigourney* v. *Stowell*, 4 Met. 518; *Willey* v. *Paulk*, 6 Conn. 74; *De Forest* v. *Strong*, 8 Conn. 513; 1 Greenl. Ev. § 523; *McLaughlin* v. *Bank of Potomac*, 7 How. 229; *Berger* v. *Williams*, 4 McLean 577; *Dummond* v. *Prestman*, 12 Wheat, 515; *Heard* v. *Lodge*, 20 Pick. 53; *Boyd.* v. *Caddwell*, 4 Rich. 117; *Jacob* v. *Hill*, 2 Leigh. 393; *Train* v. *Gold*, 5 Pick. 380.

The sureties may impeach the judgment for fraud or collusion, but in no other way.

ADDIS, J.    The condition of the bond, which the sureties of

the deputy sheriff gave to the sheriff, is that the deputy shall faithfully perform the duties of his office and " shall save and keep harmless and indemnified the said sheriff from all actions, suits, troubles, costs, charges, damages and expenses whatsoever on account or by reason of any malfeasance, misfeasance or non-feasance of said depnty." The plaintiff, the sheriff, was sued for the neglect of the deputy in not paying over moneys collected on an execution. He notified the deputy thereof, who appeared in and defended the suit. But judgment was rendered against the sheriff and he was obliged to pay the damages and cost recovered against him for this neglect of his deputy. He now brings this suit against the deputy and his sureties to recover the amount he has so paid. The sureties by way of defence plead matters to show that the deputy was not guilty of any neglect—being matters which the deputy might have pleaded, and probably did plead, in defence to the suit brought by the creditor against the sheriff. The plaintiff claims that the judgment against him in the suit in favor of the creditor is conclusive, as to the fact of the deputy's neglect, not only against the deputy who defended the suit, but also against the sureties who had no notice of it.

The rule of law that none shall be bound by a judgment but parties and privies is founded in justice. It would be most unjust—contrary to all ideas of the administration of justice in civilized countries—to hold that a judgment should be binding upon one who, neither by himself, nor by one representing him and identified in interest with him, has had an opportunity to appear in court and make defence. The difficulty in applying the rule is to determine who are privies. The general doctrine as expressed by Mr. Greenleaf is—that the person who represents another and the person who is represented have a legal identity, so that whatever binds the one, in relation to the subject of their common interest, binds the other also. 1 Gr. Ev. §536, p. 710. This he illustrates by a judgment against the ancestor that binds the heir,—against a grantor that binds subsequent grantees, &c.

An examination of the decisions on this subject shows that there is a great conflict of authorities as to when and how

far sureties are bound by judgments against their principals. All agree as to the extremes but there is a wide middle ground upon which they differ. Thus bail in pending suits—who are sureties for costs, &c.—are held bound by the judgment against their principals. This is plainly right,—it is the intent of their agreement in becoming bail. So of special bail who are bound to respond the judgment. *Parkhurst* v. *Sumner*, 23 Vt. 538. On the other hand where the surety is bound with the principal merely for the payment of money or the performance of some act, and his agreement does not, either expressly or by the nature of the case, bind him to the performance of any decree or judgment of a court,—as, for instance, a surety on a promissory note—there he is held not to be bound by the judgment.

The contradiction among the authorities may be seen by comparing *Berger* v. *Williams*, 4 McLean 577, where it was held that a judgment against a principal is conclusive against the surety, where they had entered into a joint bond to pay the debts of a firm in which the principal had been a partner, though the surety had no notice of the suit;—and *Douglass* v. *Howland*, 24 Wend. 25, where in a case involving the same principle the contrary doctrine was held. See also the note in 2 Am. Lead. Cases 439 to 450, and the cases there cited.

Without attempting to review the numerous cases cited upon the argument of this case, we deem it sufficient to say—that it appears to be a well settled principle that where the sureties, by the express terms of their agreement, or by reasonable implication from the very nature and intent of their obligation, have stipulated to pay the damages and costs which may be recovered against their principal, or otherwise to abide the decree or judgment of a court against the principal, there they are bound by the judgment though they have no notice of the suit. This results from their agreement. And the cases show that this agreement need not be by express words—or specify a particular suit or cause action; but is held to arise from the nature of the contract and of the relations of the parties in certain classes of cases. Hence, and upon this basis as we regard the decisions, it has been held that a judgment against a constable for misconduct in his office

is evidence against his sureties in a suit on his official bond for the faithful performance of the duties of his office ; *Lowell* v. *Parker*, 10 Met. 315 ; and that a judgment against the administrator in favor of a creditor is evidence in a suit on the administrator's bond against the sureties, and is conclusive as to all those things which might have been shown in defence of the suit against the administrator, though the sureties were not parties to it. *Heard* v. *Lodge*, 20 Pick. 53. The same doctrine is held in Connecticut, ( *Willey* v. *Paulk et al.*, 6 Conn. 74,) where the bond of the sureties for the executor was, that he should settle the estate according to law, the provisions of the will and the orders of court ; Judge PETERS resting the decision upon the ground that the sureties were privies *by contract* to the judgment. Whether this decision was not extended to a case—*Deforest* v. *Strong*, 8 Conn. 514—to which it was not applicable, may, I think be fairly questioned. In *McLaughlin* v. *The Bank of Potomac*, 7 Howard 229, the United States Supreme Court recognized the same principle. The terms of the bond of the administrator are not stated in the report, the court seeming to infer the privity of contract from the nature of the relation.

The case of *Train* v. *Gold*, 5 Pick. 380, is in point. The defendant Gold as surety for one Ashley agreed to indemnify the plaintiff against any damage or cost, that might happen to him in consequence of the plaintiffs levying an execution on certain property. The terms and nature of the agreement are similar to those in this case. The judgment against the plaintiff with notice to Ashley was held to be conclusive evidence against the surety.

*Morris* v. *Lucas*, 8 Blackford 9, is the ordinary case of an attempt to charge a warrantor of title of personal property for failure of title. Notice to the warrantor to defend the tittle is of course indispensable to make the judgment binding upon him. *Beale* v. *Beck*, 3 Har. & McH. 242, is a very imperfect and unsatisfactory report of a decision in Maryland and of but little value as an authority.

In *Douglass* v. *Howland*, 24 Wend. 35, and in most of the cases which maintain that an ordinary surety or guarantor is not

bound by a judgment against the principal, it is admitted that if the surety contract to be bound by the judgment he is then bound by it. Judge COWEN says: "It is true he might so have framed his contract as to have undertaken for the decree; like special bail engaging for their principal; or there may be an express stipulation *in pais*, that the principal shall abide the event of the suit as in 1 Dall. 419. Something of the same nature are bonds of indemnity against actions and cases, as in *Duffield* v. *Scott*, 3 T. R. 374; CH. J. GIBSON in *Masser* v. *Strickland*, 17 S. & R. 354, though dissenting from the decision, recognizes the same doctrine.

In the case at bar the bond of indemnity is against all suits, actions, damages and costs against the sheriff on account of the default of the deputy. In its terms the condition of the bond refers by necessary construction to suits against the sheriff—to judgments against him for damages and costs. These words bring the instrument within the class of cases like *Train* v. *Gold*, and *Willey* v. *Paulk*.

But when we consider the nature of the contract and the relations of the parties, this language has a special significance and leaves no doubt that the intent of the contract was that the surety should not be left to question—but should be conclusively bound by the judgment in the suits against the sheriff.

By law the action for the deputy sheriff's malfeasance must be brought against the sheriff. Practically the deputy sheriff appears and defends. He knows whether he has been guilty of a default or not, and whether he has a defence or not. The sheriff is not expected to defend; all he has to do is to notify the deputy and he then becomes the actual defendant. The sheriff on the one hand and the sureties on the other do not interfere with the conduct of the suit,—and for the obvious reason that the deputy has the means, the knowledge and the interest to defend it,—and they ordinarily have neither the means nor the knowledge. If, as in this case, the defence fails and judgment goes against the sheriff, he is bound for the amount recovered; and then, if the deputy does not pay such amount and the sheriff does, the very event happens against

which the sureties have guaranteed. Can it be fairly said that the sureties understood their contract with the sheriff to be this? If the sheriff is sued for malfeasance of the deputy, he shall notify the deputy; the deputy shall then appear and defend. If judgment goes against him and the sheriff has to pay the damages and costs, then the sheriff may sue us, and we shall then have the right to try the question over again whether the deputy has been guilty of a default, and if we can show he has not been guilty, then we shall be clear, and the sheriff shall lose the damages and costs. The mere statement of the claim, considered in connection with the relation of the parties and the nature of the indemnity, seems to us to show its unreasonableness. The parties made their contract knowing and having reference to these relations, and must have expected that it would be interpreted in the light of them. Their meaning would hardly have been plainer, if they had used these words in the bond; if the sheriff, when sued for the malfeasance of the deputy, shall relinquish to him the defence of the suit, we will pay whatever damages and costs may be recovered in it against the sheriff.

There is another reason drawn from the provisions of our statutes that favors this construction. A judgment against the sheriff binds his sureties, though they have no notice, except where the judgment is by default, and thus the sheriff's sureties are bound by the judgment against the sheriff for the misconduct of the deputy; while if we held to the theory of this defence, the sureties of the deputy himself would not be bound.

Such a result would be unreasonable and unjust. And if the contract is to be construed by our laws and to have that intent which the parties must be supposed to have entertained with knowledge (at least in theory) of the law, we cannot suppose they meant to enter into obligations so ill adapted to throw the burdens of their agreements where they ought to belong.

The sureties can impeach the judgment for fraud or collusion, and that provision protects them as all other men are protected against judgments to which they are privy in the law.

Judgment affirmed.